## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BLT, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 1:20-CV-0072-MSM-PAS |
| TOWN OF EAST GREENWICH and | ) |
| PATRICIA SUNDERLAND, in her | ) |
| Capacity as Finance Director, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the Motion to Dismiss of the defendants, Town of East Greenwich and Patricia Sunderland in her capacity as Finance Director (collectively "the Town"), which seeks to dismiss the plaintiff, BLT, LLC's, Complaint, under Fed. R. Civ. P. 12(b)(6). (ECF No. 11.) In deciding this motion the Court must consider whether the plaintiff sets forth a plausible claim that a recent amendment to the Code of the Town of East Greenwich, Chapter 152—the Town's noise ordinance—is unconstitutional; an *ultra vires* exercise of the Town's authority; or in violation of certain state statutes: R.I.G.L. § 3-7-7.3 and § 45-24-51.

For the following reasons, the Court GRANTS IN PART and DENIES IN PART the Town's Motion to Dismiss.

## I.    BACKGROUND

The following facts are as alleged in BLT's Complaint. On a motion to dismiss,

1

the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).

## A. BLU On The Water

BLT, LLC, operates under the name BLU on the Water ("BLU"). BLU is a seasonal harborside restaurant in East Greenwich, Rhode Island. (ECF No. 1 ¶ 9.) It is on a property zoned Commercial Highway, but in a geographical area known as the Waterfront. *Id.* ¶¶ 1, 11. The Town's Comprehensive Plan has a stated policy to "encourage restaurants along the waterfront" and recognizes the "highly popular waterfront" as an economic engine. *Id.* ¶¶ 34-35.

BLU and its predecessors have operated the BLU property for approximately four decades as a restaurant, bar, and marina offering a large outdoor deck with live entertainment. *Id.* ¶ 12. BLU holds a Class B retailer's license to serve alcohol, a CV victualer's license to serve food, and an entertainment license. *Id.* ¶ 24-26. It offers live music from mid-May through late September on Thursday, Friday, and Saturday nights as well as on Sundays and legal holidays until 10 p.m. *Id.* ¶ 12-13.

The configuration of BLU's facility is such that it is not practicable to offer live music entertainment only indoors during the summer season because most of its capacity is outdoors and most patrons come to enjoy the expansive waterfront deck. *Id.* ¶ 32. This outside entertainment is an indispensable aspect of BLU's successful operation of its short season. *Id.* ¶ 33.

To minimize the travel of sound from its business to neighboring properties,

BLU has installed soundproofing material, removed subwoofers, eliminated certain bands that incorporate brass horns, and closely monitors volume levels during performances.  *Id.* ¶ 39.

## B. The Old Noise Ordinance

The Town's noise ordinance that existed prior to the enactment at issue in this case (the "Old Ordinance") established maximum noise levels for each of the Town's zoning districts, which varied by time of day.  *Id.* ¶ 58.  All commercial zoning districts had maximum noise levels of 70 dbA from 7:00 a.m. to 10:00 p.m. and 65 dbA from 10:00 p.m. to 7:00 a.m.  *Id.* ¶ 59.  All residential zoning districts had maximum noise levels of 60 dbA from 7:00 a.m. to 10:00 p.m. and 55 dbA from 10:00 p.m. to 7:00 a.m.  *Id.* at 58.  Additionally, all maximum noise levels under the Old Ordinance allowed for a 5 dbA buffer that was applied to increase all maximum noise levels.  *Id.* ¶ 60.  That is, exceeding the specified maximum sound levels by more than five decibels triggered a fine.  *Id.* ¶ 65.  An entertainment license holder fined four times in one year would have its entertainment license suspended for three months.  *Id.*

In addition to the specified maximum noise levels by zoning district, the Old Ordinance also specified noise levels for the Waterfront area, regardless of zoning district, from Memorial Day weekend through Labor Day, as follows:

| Day | Time | Sound Level (dbA) | Sound Level (dbC) |
|---|---|---|---|
| Monday | 6:00 p.m. to 10:00 p.m. | 55 | 65 |
| Tuesday | 6:00 p.m. to 10:00 p.m. | 55 | 65 |
| Wednesday | 8:00 p.m. to 10:00 p.m. | 65 | 75 |
| Thursday | 8:00 p.m. to 12:00 a.m. | 65 | 75 |
| Friday | 5:30 p.m. to 12:30 a.m. | 65 | 75 |
| Saturday | 2:00 p.m. to 12:30 a.m. | 65 | 75 |
| Sunday* | 2:00 p.m. to 10:00 p.m. | 65 | 75 |

| Monday holidays | 2:00 p.m. to 10:00 p.m. | 65 | 75 |
|---|---|---|---|
| * Except on holiday weekends: 12:00 a.m. | | | |

The Old Ordinance allowed outdoor sound-amplifying equipment in the Waterfront area upon obtaining a permit from the Police Department. *Id.* ¶¶ 64, 66.

## C. The Sound Amendment

Following the election of the present Town Council in November 2018, BLU was advised that a new sound ordinance would be enacted that would change the sound levels in the Waterfront area, affecting BLU, two other waterfront businesses, and the Fireman's Club. *Id.* ¶ 53. At the request of the Town Council, BLU agreed to share in the cost of James H. Miller, a professor of oceanography at the University of Rhode Island, who was charged with obtaining sound data at the East Greenwich waterfront. *Id.* ¶ 57.

Professor Miller used portable equipment to take measurements of the sound decibel levels in the Waterfront area on various days between June 15 and July 20, 2019. *Id.* ¶ 68. He then prepared a report, dated August 30, 2019, titled "Noise at the East Greenwich Waterfront," which concluded that "[d]iscussions with residents indicate that sound levels from the music above 65 dBC and 60 dBA at the property lines of the bars are particularly annoying." *Id.* ¶ 69. The report recommended that "60 dBA and 65 dBC be used in a revised noise ordinance for the Town of East Greenwich." *Id.*

Professor Miller appeared at a Town Council meeting on September 9, 2019, to answer questions about his report. *Id.* ¶ 70. He acknowledged that the only neighbor

Case 1:20-cv-00072-MSM-PAS   Document 14   Filed 08/03/20   Page 5 of 16 PageID #: 115

he consulted with was the owner of 88 King Street, a property near to BLU, and like BLU zoned Commercial Highway, but used as a nonconforming single-family residence. *Id.* ¶ 73. He also acknowledged that even if all music was eliminated, a noise problem still may exist in the Waterfront area due to traffic. *Id.* ¶ 72.

On November 12, 2019, the Town Council enacted the Sound Amendment,[1] which adopted new maximum permitted noise levels only for the Waterfront area and maintained the old sound levels elsewhere in the Town. *Id.* ¶ 75. The Sound Amendment also eliminated the 5 dbA buffer. *Id.* The new maximum sound levels in the Waterfront area between Memorial Day weekend and Labor Day are as follows:

| Day | Time | Sound Level (dbA) | Sound Level (dbC) |
|---|---|---|---|
| Monday, Tuesday, Wednesday | 6:00 p.m. to 10:00 p.m. | 60 | 65 |
| Thursday | 8:00 p.m. to 12:00 a.m. | 60 | 65 |
| Friday | 5:30 p.m. to 12:30 a.m. | 60 | 65 |
| Saturday | 2:00 p.m. to 12:30 a.m. | 60 | 65 |
| Sunday* | 2:00 p.m. to 10:00 p.m. | 60 | 65 |
| Monday holidays | 2:00 p.m. to 10:00 p.m. | 60 | 65 |
| * Except on holiday weekends: 12:00 a.m. | | | |

The Sound Amendment provides that for any violation, "[a]ny holder of any Town-issued license may be summoned for a Show Cause hearing as to why said license should not be suspended or revoked." *Id.* ¶ 84. Additionally, the Sound Amendment, unlike the Old Ordinance, distinguishes between amplified sound permit applications for entertainment license holders and for non-entertainment

---

[1] *See* Code of the Town of East Greenwich, Chapter 152.

license holders.  *Id.* ¶ 86.  Non-entertainment license holders apply to the Police Chief (as before) but entertainment license holders must apply to the Town Council, which "shall hold a public hearing on all such applications, and may approve, approve with conditions, or disapprove of such amplification permit, consistent with the purposes of this chapter."  *Id.*

The Sound Amendment reduced the noise levels in the Waterfront area on weekend nights from 70 dbA (the maximum noise level plus the 5 dbA buffer) to a stated maximum of 60 dbA.  *Id.* ¶ 78.  The allowable dbC noise level dropped from 80 (the maximum noise level plus the 5 dbC buffer) to a maximum of 65.[2]  *Id.*  Indeed, the 60 dbA maximum sound level applicable to the Waterfront area, located in a Commercial Highway zone, is the same as the maximum sound level applicable to residential zones from 7:00 a.m. to 10:00 p.m.  *Id.* ¶ 81.  Professor Miller described the change in maximum noise levels as "like going from 120 miles per hour to 40 miles per hour."  *Id.* ¶ 79.  Notably, the Sound Amendment's new noise limits only affected the Waterfront—it did not reduce the noise limits in other areas of the Town zoned Commercial Highway, including Main Street, where live music also is performed.  *Id.* ¶¶ 29, 30.

BLU conducted ambient sound measurements at its property line and at the property line of 88 King Street in December 2019.  *Id.* ¶ 82.  The measurements showed that even when the restaurant is closed, the average ambient noise levels in

---

[2] [2] This dual measurement of dbA and dbC is applied only to the Waterfront.  (ECF No. 1. ¶ 62.)  No other municipality in Rhode Island other than East Greenwich uses a dbC measurement.  *Id.* ¶ 63.

the area regularly exceed 60 dbA and 65 dbC; maximum dbC levels are in the 90 to 100 dbC range or more.  *Id.*  A noise level of 60 dbA generally is understood in the field of acoustics to be comparable to the level of ordinary conversation between two people.  *Id.* ¶ 80.  Thus, under existing ambient conditions, sound levels from BLU's outdoor seating area will exceed the stated maximum sound level of 60 dbA, even without music.  *Id.* ¶ 83.  BLU therefore has alleged that the Sound Amendment will preclude any legally permitted use of its property.  *Id.* ¶ 98.

## II.   MOTION TO DISMISS STANDARD

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court assesses the sufficiency of the plaintiff's factual allegations in a two-step process. *See Ocasio-Herandez v. Fortuno-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011).  "Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 699 F.3d 50, 55 (1st Cir. 2012).  "Step two: take the complaint's well-pled (*i.e.,* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.*  "The relevant question … in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)).

## III.   DISCUSSION

### A. First Amendment Claim

BLU alleges a claim under 42 U.SC. § 1983 for violation of rights protected by the U.S. Constitution.  The Town argues that BLU's § 1983 claim should fail because the Sound Amendment regulates noise, which does not impact a fundamental right and therefore is subject to rational basis scrutiny.  *See Perfect Puppy, Inc. v. City of East Providence*, 98 F. Supp. 3d 408, 422 (D.R.I. 2015).  Under a rational basis test, the Town must demonstrate that the Sound Amendment is "rationally related to a legitimate government interest."  *Id.*  Regulation of noise is a legitimate government interest, the Town argues, and the decibel restrictions are rationally related to that end.

BLU, however, argues that the Sound Amendment is subject to intermediate scrutiny because it effectively serves as a restriction on amplified music.  *See Casey v. City of Newport, R.I.*, 308 F.3d 106, 110 (1st Cir. 2002).  While the Sound Amendment does not ban amplified music, and in fact allows it with the proper permitting, BLU has alleged facts that suggest that it would be impossible to play music, even unamplified, under the current decibel requirements.  *See id.* at 118 ("Much modern music simply cannot be performed without the use of amplifiers. Thus the ban on amplification has a direct and immediate effect on the expression at issue.").

The U.S. Supreme Court has held that the First Amendment protects music, a form of speech and expression, from governmental censorship and control.  *Ward v.*

*Rock Against Racism*, 491 U.S. 781, 790 (1989). Yet, "the government may impose reasonable restrictions on the time, place, or manner of protected speech," if those restrictions are (1) content neutral; (2) narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative channels of communication. *Casey*, 308 F.3d at 110 (quoting *Ward*, 491 U.S. at 791). This test is known as "intermediate scrutiny," and the Court finds that it applies to the instant case.

The Sound Amendment is surely content neutral. It is aimed generally at reducing the noise level in the Waterfront area, without regard to content. *See Ward*, 491 U.S. at 791.

As to whether the Sound Amendment is narrowly tailored to serve a significant interest, the Town does have "a substantial interest in protecting its citizens from unwelcome noise," *id.* at 796, but this alone does not satisfy the narrow-tailoring requirement, *Casey*, 308 F.3d at 114. An ordinance is narrowly tailored if it promotes a substantial government interest that would be achieved less effectively absent the regulation, and it is not substantially broader than necessary to achieve the government's interest. *Ward*, 491 U.S. at 799-800. The Town, however, need not show that the Sound Amendment utilizes the least restrictive means of achieving the governmental interest. *See id.* at 797.

Here, BLU has alleged facts that indicate the Sound Amendment is overly broad as BLU may be in violation merely by operating, even without music, amplified or otherwise. *See Lilly v. City of Salida ex rel. City Council of Salida*, 192 F. Supp.

9

2d 1191, 1194 (D. Colo. 2002) (holding that a city ordinance was "so limiting that it constitutes a complete ban on the use of amplified sound for any form of speech. It cannot be justified as a reasonable time, place and manner restriction on speech and cannot be considered to be narrowly tailored to meet the governmental interest in protecting the community against unwanted noise").

Similarly, BLU has pled sufficient facts to support a claim that the Sound Amendment does not leave open alternative channels of communication because, according to the well-pled facts, music may be impossible under the Sound Amendment.   BLU therefore has set forth a plausible claim that the Sound Amendment is unconstitutionally broad with respect to First Amendment rights.

## B.  BLU's Takings Claim

BLU's § 1983 claim also includes a facial taking claim under the Fifth and Fourteenth Amendments to the U.S. Constitution.  A facial taking involves "a claim that the mere enactment of a statute constitutes" a governmental taking of property, in contrast to an as-applied claim that "the particular impact of government action on a specific piece of property requires the payment of just compensation." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987).  Facial takings challenges are ripe the moment the challenged law is passed. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n.10 (1997).

"The first step in seeking relief from a deprivation of property without due process in violation of the Fifth and Fourteenth Amendments is a legally plausible allegation of a 'protected property interest' recognized under state law." *Caesars*

10

*Mass. Mgmt. Co., LLC v. Crosby*, 778 F.3d 327, 332 (1st Cir. 2015).  Second, a property owner claiming a facial taking must allege that the enactment at issue deprived it of the economically viable use of the property. *Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez*, 659 F.3d 42, 48 (1st Cir. 2011).

The Town argues that BLU's facial takings claim must fail because the Sound Amendment does not preclude any use of the property other than that which creates noise in excess of certain decibel levels at certain hours.  That is, even if BLU determines that it cannot abide by the Sound Amendment when providing live, outdoor entertainment, BLU continues to have the ability to function as a restaurant, bar, and marina.

BLU, however, has alleged a protected property interest in "the reasonable permitted and historic use of its outdoor seating areas during the summer season and the general operation of its facility."  (ECF No. 1 ¶ 101.)  Moreover, BLU properly has alleged that the Sound Amendment "will deprive BLU of all beneficial use of its property" because the 60 dbA noise limit "is generally understood in the field of acoustics to be comparable to the level or ordinary conversation between two people." *Id.* ¶¶ 80, 108.  Thus, "[s]ound levels from BLU's outdoor seating area, when BLU reopens for the summer season under existing ambient conditions, will exceed the stated maximum sound level of 60 dbA even with no music." *Id.* ¶ 83.

BLU therefore has alleged sufficient facts to support a facial taking claim.

11

### C. Vagueness

BLU next challenges the Sound Amendment on the grounds that it is void for vagueness.  The vagueness doctrine is an outgrowth of the Due Process Clause of the Fourteenth Amendment.  *United States v. Williams*, 553 U.S. 285, 304 (2008).  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984).  Generally, laws must give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108.  A vague law both "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis" and leads "citizens to 'steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked.' " *Id.* at 108–09.

"A statute can be impermissibly vague for either of two independent reasons." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  *Id.*  "Laws that chill speech or other protected conduct receive closer scrutiny in a vagueness analysis." *URI Senate v. Town of Narragansett*, 707 F. Supp. 2d 282, 292 (D.R.I. 2010) (citing *Ridley v. ass. Bay Transp. Authority*, 390 F.3d 65, 94 (1st Cir. 2004)).

The Sound Amendment clearly sets forth specific and objective permissible

decibel levels in the various zoning districts within the Town, including the Waterfront area, at varying times of day. There is nothing at all vague about its terms. Thus, the Sound Amendment "defines the conduct it proscribes with the requisite specificity" so as to satisfy the due process requirements of the Fourteenth Amendment. *See Dupres v. City of Newport, R.I.*, 978 F. Supp. 429, 433 (D.R.I. 1997).

But BLU further contends that the Sound Amendment is void for vagueness due to the "show cause" standard set forth for imposition of penalties for violation of the Sound Amendment, which it asserts will encourage arbitrary and discriminatory enforcement. BLU asserts that the penalty provision can result in license revocation for one violation, which can occur when the business is open and no music is being played.

The Court, however, finds that the standards set forth in the Sound Amendment (the precise impermissible decibel levels) are safeguards against both arbitrary and discriminatory enforcement. The Sound Amendment therefore does not give the Town "too broad a discretion in determining whether conduct was proscribed." *See Grayned*, 408 U.S. at 109. The proscribed conduct is clear: whether BLU may violate the ordinance can objectively be determined. While BLU may have concerns about uncertainty regarding a potential penalty for doing so, the vagueness doctrine is not the remedy for that concern.

**D. *Ultra Vires***

Although BLU argues that the Sound Amendment was an *ultra vires* exercise of the Town's authority, the Town correctly sets forth that the Rhode Island Supreme

Court has recognized that noise ordinances are within the purview of "local regulation" because they relate to promoting the public welfare, and are "readily reconciled with the language of article 13 of the Rhode Island Constitution – that 'the people of every city and town in the state [have] the right of self government in all local matters." *State ex. rel. City of Providence v. Auger*, 44 A.3d 1218, 1231 (R.I. 2012). BLU therefore cannot set forth a plausible claim on this issue.

### E. R.I.G.L. § 3-7-7.3

BLU also alleges that the Sound Amendment violates R.I.G.L. § 3-7-7.3 and thus is an unlawful restriction upon the live music entertainment that it offers. R.I.G.L. § 3-7-7.3(a) provides that

> Notwithstanding any provision of this chapter or in the Rhode Island general laws to the contrary, in the case of any city or town that issues any retailer's Class B license, this city or town may restrict or prohibit entertainment at these licensed facilities, in accordance with objective standards adopted by the municipality and approved by the department of business regulation, provided that any standard shall be applied uniformly to all of these licensed facilities.

The Town argues that the Sound Amendment, which in relevant part sets forth maximum noise levels, is not on its face a restriction or prohibition of entertainment, and thus § 3-7-7.3 is inapplicable. BLU, however, has asserted that the maximum noise levels prevent any live entertainment because previous ambient sound measurements demonstrated that noise levels in the area regularly exceed the allowed limits even when the restaurant is closed. Moreover, although the Sound Amendment on its face is general in nature, sufficient facts are alleged that indicate

14

that was is designed to restrict entertainment in the Waterfront.[3]  Thus, BLU has plausibly set forth an argument that the Sound Amendment is a municipal restriction on entertainment.

Of course, under § 3-7-7.3(a), the Town is expressly permitted to restrict entertainment provided by Class B license holders.  But any such standard "shall be applied uniformly to all [Class B] licensed facilities."  Section 3-7-7.3(a).  BLU has alleged that the amended maximum noise levels affect only the Waterfront, where BLU is in a Commercial Highway zone, but do not change the noise levels for any other Commercial Highway zone, such as Main Street.  Thus, Main Street Class B license holders can operate without the entertainment restrictions imposed upon BLU.  That is not uniform application of the restriction and as a result BLU has set forth a plausible claim regarding R.I.G.L. § 3-7-7.3.

### F.  R.I.G.L. § 45-24-51

R.I.G.L. § 45-24-51, a provision of the Rhode Island Zoning Enabling Act, sets forth procedural and substantive requirements for enactments of a municipal zoning ordinance.  BLU argues that the Sound Amendment is *de facto* rezoning because it mandates residential noise levels during business hours in a Commercial Highway zone.  To BLU, the Sound Amendment in effect renders it a non-conforming use by imposing residential zone noise limits that BLU will exceed merely by being open for

---

[3] For instance, BLU alleges that Professor Miller's report, which recommended the Waterfront  noise levels the Town ultimately adopted in the Sound Amendment, concluded that "[d]iscussions with residents indicate that sound levels from the music above 65 dBC and 60 dBA at the property lines of the bars are particularly annoying." (ECF No. 1 ¶ 69.)

business during the summer, even without amplified music.

The Town argues that the Sound Amendment is not a part of the East Greenwich Zoning Ordinance and does not regulate land use, the hallmark of a zoning ordinance. Although the Sound Amendment refers to areas of Town by their zoning districts that does not make the ordinance a part of the zoning ordinance and therefore subject to the requirements of § 45-24-51.

The Court agrees. The Sound Amendment, which does not set land use criteria, is not a zoning ordinance, and thus reliance upon § 45-24-51 is misplaced. BLU still can operate commercially, just under new noise restrictions (which may be invalid for other reasons).

## IV.   CONCLUSION

For the foregoing reasons, the Town's Motion to Dismiss (ECF No. 11) is GRANTED as to BLU's claims that the Sound Amendment is void for vagueness, an *ultra vires* exercise of the Town's authority, and in contravention of R.I.G.L. § 45-24-51. The Town's Motion is DENIED as to BLU's facial taking claim, claim that the Sound Amendment is an overly broad restriction on First Amendment rights, and claim that it violates of R.I.G.L. § 3-7-7.3.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge
July 31, 2020

16